### THE BANK OF LOUISIANA *v.* JOSEPH FOWLER.

Under the 17th sect. of the act of 7th April, 1824, incorporating the Bank of Louisiana, which declares that if the bank "shall, at any time, suspend or refuse payment, in current money of the United States, of any of its notes, bills or obligations, or of any moneys received upon deposit, the holder of any such note, bill or obligation, or the person entitled to demand and receive such moneys, shall be entitled to interest thereon from the time of such suspension or refusal until the same shall be fully paid, at the rate of twelve per cent per annum," the holder of a claim can recover interest at that rate only from the time of a demand, or from the pe-

The Bank of Louisiana v. Fowler.

riod when the bank was in default, and not from the date of a general suspension of specie payments, without such demand. This section does not apply to claims by a stockholder for dividends due by the bank. It was intended to provide for the public dealing with the bank, and not for the stockholders *inter se*. The legislature never intended to subject the stockholders to such a penalty towards each other, for not paying their dividends in specie.

Where one having money on deposit in a bank becomes indebted to it by the maturity of a note executed by him and held by the bank, compensation will take place, and the debts extinguish each other to the amount of the smaller of the two.

Between the parties, compensation, whether by operation of law or by way of exception, produces the same result. When it is ascertained that the parties are mutually indebted to each other at a particular time, from that moment the two debts are extinguished for equal amounts. C. C. 2204.

APPEAL from the District Court of the First District, *Buchanan*, J.

BULLARD, J. The bank sues on a note drawn by the defendant, for thirty-six thousand dollars, secured by a pledge of four hundred and fifty shares of stock, due on the 6th day of July, 1837. The defendant admits the execution of the note, but pleads, in reconvention, that at the maturity of the note, and for a long time before, he had, on deposit in the bank, a large sum of money, which, with interest then due, according to law and the charter of the bank, amounted to more than sufficient to pay the note, and which the bank refused to accept in discharge thereof; and that, having for a long period previous suspended specie payments, it refused to pay the respondent his money so deposited, and still retains the same, whereby it has become liable to pay him interest at the rate of twelve per cent per annum up to this time, amounting in all to sixty-three thousand dollars and upwards; leaving a balance in his favor, after extinguishing the note, of $16,862 05. He further claims for dividends declared by the bank, and not paid to him as a stockholder, $6,084 10, with interest at the rate of twelve per cent. For these two sums he asks for judgment in reconvention.

The District Court allowed the interest on the defendant's deposit, from the first suspension of specie payments, May 13th, 1837, until July 6th, when the stock note fell due; at that time it allowed compensation, refused to give interest on the dividends, and rendered a judgment in favor of the defendant, on

his reconventional demand, for about $4000, including the dividends; and the defendant appealed.

The bank prays that the judgment may be amended, so as to reject the interest or damages, at twelve per cent from the suspension of specie payments up to the maturity of the note.

It appears in evidence, that when the note sued on fell due, the defendant, by his agent, drew a check for the amount, to which was appended a calculation of interest at twelve per cent, charged by him on the real amount on deposit, something less than the amount of the note. This was refused, because the bank would not allow the interest, and without it the deposit was less than the amount of the note. The same check was tendered to the notary when he demanded payment, previously to the protest.

Thus the pleadings and evidence present three questions for our consideration. 1st, Whether the court erred in allowing the interest at twelve per cent, up to the maturity of the note, from the suspension of payments in May, 1837; 2nd, whether compensation was properly allowed so as to stop the interest at the maturity of the stock note; and 3d, whether the defendant be entitled to recover interest at twelve per cent on the amount of his dividends.

I. The 17th section of the charter declares, that if the bank shall, at any time, suspend or refuse payment, in current money of the United States, of any of its notes, bills or obligations, or any moneys received upon deposit, the holder shall be entitled to recover interest thereon from the time of such suspension or refusal, until the same shall be fully paid, at the rate of twelve per cent per annum.

Under a similar provision in the charter of the Canal and Banking Company, we held, in the case of *Bartlett* v. *The Canal Bank* (1 Rob. 543), that the holder of a claim could recover the interest only from the time of a demand, or putting in default, and not from the period at which a general suspension of specie payments took place, without such demand. We can perceive no good reason for applying a different rule to the case now before us; and, consequently, our first enquiry is, whether such a demand had been made.

The Bank of Louisiana v. Fowler.

It appears that on the 13th of May, 1837, when the bank, with five others, suspended, the defendant had on deposit, $61,840 46, and that on the 6th of July, when the stock note fell due, the amount had been reduced, according to his own statement, by checks, to $35,139 01, and during that period a general suspension of specie payments existed. A paying teller testified, that about the time the bank suspended, the defendant came to him, and witness told him they were paying only five dollar notes. Defendant got one changed for specie, and then asked witness if he would not pay him the amount of his deposit in specie. He further testifies, that the usual mode of making a demand is by presenting a check. This was a few days after the bank suspended. He cannot recollect if the defendant made a formal demand of payment of the deposit. It is so long since that witness cannot recollect precisely what passed. Mr. Fowler was in the habit of buying up the notes of the bank, and presenting them for specie. His demand, if any was made for the deposit, was in the way of a complaint against the bank. The cashier of the bank testified, that he did not recollect that Fowler had ever made a demand of him, or at the bank, for the payment of the deposit; but admits that the dividends were demanded. He thinks he would not have paid the deposit in specie, on the 14th May, without an order of the Board. On the 29th of May, the defendant addressed a letter to the president and directors, in which he complains that the president had, previously to the suspension, interfered to prevent his deposit being considered as a special one. He says that when he applied to make a special deposit, he assured the president that the amount set apart might be used, provided the bank would indemnify him in case of suspension. He concludes by saying, that he is constrained to demand the amount of damages, to which he is justly entitled. In another letter of the 8th of June, 1837, he complains that his various applications for a fair adjustment of his claim had been disregarded, and he enquires whether the bank is ready to settle with him in accordance with the 17th section of the charter. In no part of these letters does he intimate that he had demanded the restoration of the deposit, but he complains that the bank is unwil-

ling to pay the damages according to the 17th section of the charter, and that they had refused to convert his into a *special* deposit, on or about the 29th of April.   He says, in one of these letters, " although fully persuaded, for some time before I made the application for a special deposit, that not only the bank of Louisiana, but every other bank in the city would have to suspend payment, I did not certainly, after what passed between the president of that bank and myself, for a moment believe, that the Board would, in case of suspension, hesitate to indemnify me for my loss;" &c.   From the tenor of these letters, it would appear that the defendant based his claim for damages upon the refusal of the bank to make a special deposit of the balance due to him.   On the 9th of June, he again asks for an adjustment of his account according to the 17th section of the charter. ·

The question put to the teller, does not, in our opinion, amount to a demand of payment, because no check was offered or receipt tendered, and it is the duty of the teller to pay checks, and not to answer enquiries of that kind.   If the defendant had presented a check, or made a regular demand for the payment of his deposit, he would have laid a legal foundation for his claim for interest at twelve per cent.   This he does not appear to have done; and between the 13th of May and the maturity of his note, he appears to have drawn out, on his checks, nearly thirty thousand dollars.

We conclude that the court erred in allowing the damages, without proof of a demand of payment.

II. Between the parties, compensation, whether by operation of law or by way of exception, produces the same result. When it is ascertained that the parties are mutually indebted to each other, at a particular time, from that time the two debts are extinguished for equal amounts.   Civil Code. art. 2204. Thus, even if the deposit had borne interest at twelve per cent, as soon as the stock note fell due the debt itself would have become extinct to the amount of that note, and the interest would have ceased to run.   It may be otherwise as to third persons who acquired rights before compensation allowed on exception, and when not produced by mere operation of law.   Even

Bank of Louisiana v. Fowler.

if this were doubtful as a general rule, the 20th rule or by-law of the bank declares ".that all notes discounted shall be charged to the account of the payer when due, provided there are funds in bank to the credit of such person or persons, and he or they neglect to have the same taken up before the shutting of the bank on the last day of grace." Consequently the bank was authorized on the 6th July, to apply the fund on deposit to the payment of the stock note.

III. The last enquiry is, whether the defendant was entitled to interest at twelve per cent on the amount of his dividends as a stockholder, from the time of his demand of payment in specie and notarial protest. On this point we concur with the court below, that the provisions of the 17th section of the charter do not apply to dividends. The legislature intended to provide for the public dealing with the bank, and not for the stockholders *inter se ;* and it could not have been contemplated that, while the circulation of the bank was not redeemed in current money of the United States, the bank could declare a dividend of profits, much less that the stockholders should incur towards each other a high penalty for not paying such dividends in specie.

According to this view of the case, the amount on deposit on the 6th of July, 1837, being imputed to the payment of the stock note, left a balance upon which interest is chargeable until the first dividend, Feb. 6, 1838, when the amount of the dividend was extinguished *pro tanto,* leaving a balance in favor of the plaintiff in reconvention, which added to the second dividend, due in August, of $1,800, gives a total of $3,156 45, for which he is entitled to judgment.

It is, therefore, adjudged and decreed, that the judgment of the District Court be reversed, and ours is that the defendant, as plaintiff in reconvention, recover of the Bank of Louisiana, three thousand one hundred and fifty-six dollars and forty-five cents, with interest at six per cent from the 22d day of August, 1838, on the sum of $1,800; and on the balance, from the 6th of February, 1838, until paid, and the costs in the District Court; those of the appeal to be paid by the defendant and appellant.